UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THEECHECK.COM, LLC,

                                   Plaintiff,                          16-cv-8722 (PKC)

            -against-                                  MEMORANDUM
                                                                       AND ORDER

NEMC FINANCIAL SERVICES GROUP INC.,
CYBERBOX TECHNOLOGY, INC.,
ELLINGTON PICHARDO, PRESLEY
MARTINEZ and OJAY MARTINEZ-GIL,

                                   Defendants.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Under Rule 55(a), Fed. R. Civ. P, a party defaults when it "has failed to plead or otherwise defend" against a judgment for affirmative relief. "It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint. However, it is also true that a district court need not agree that the alleged facts constitute a valid cause of action." City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (internal citation and quotation marks omitted). "[P]rior to entering default judgment, a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." Id. (alterations in original) (quoting Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)). "Accordingly, a court must consider whether the complaint alleges enough facts to state a claim to relief that is plausible on its face, and find it lacking where the complaint tenders naked assertions devoid of further factual enhancement." Belizaire v. RAV Investigative & Sec. Servs. Ltd., 61 F. Supp. 3d 336, 344

(S.D.N.Y. 2014) (Oetken, J.) (citing <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

Plaintiff TheECheck.com, LLC ("ECheck") has filed two motions for entry of default judgment. The first motion is made against the corporate defendants, NEMC Financial Services Group Inc. ("NEMC") and Cyberbox Technology, Inc. ("Cyberbox"). (Docket # 29.) The second motion is made against two of the three individual defendants, Ellington Pichardo and Ojay Martinez-Gil. (Docket # 37.) ECheck has filed affidavits of service as to these defendants, and the Clerk has issued certificates of default against them. (Docket # 19-20, 24-25, 28, 35-36.)

The Complaint includes one claim of false advertising under the Lanham Act and six claims under New York common law. Subject matter jurisdiction is premised on federal question jurisdiction over the Lanham Act claim. (<u>See</u> Docket #16 (letter from ECheck disclaiming allegation of diversity jurisdiction); Compl't ¶ 12 (asserting federal question jurisdiction).)

For the reasons that will be explained, ECheck's motion for entry of default judgment is granted solely against NEMC as to liability for ECheck's claim under the Lanham Act and its breach of contract claim. It is denied in all other respects.

BACKGROUND.

According to the Complaint, "Defendants own, operate and/or control" businesses that compete with ECheck, including NEMC and Cyberbox. (Compl't ¶ 2.) ECheck alleges that in April 2012, Pichardo executed an agreement with ECheck on behalf of NEMC, which required NEMC to pay $100,000 to ECheck. (Compl't ¶¶ 46-47.) It alleges that NEMC stopped making its required payments, and still owes $60,000 to ECheck. (Compl't ¶¶ 48-49.)

Allegedly, the undifferentiated "Defendants" then launched "a smear campaign" to steer business away from ECheck and toward NEMC and non-party World Credit Express. (Compl't ¶ 43.) The Complaint alleges, with no supporting allegation, that defendant NEMC is the alter ego of the three individual defendants. (Compl't ¶ 11.)

ECheck's claims principally involve a negative comment left on website called Ripoff Report, which apparently publishes consumer reviews. ECheck alleges that defendants "commenced and orchestrated a systematic pattern of online harassment and disparagement" based on this negative review. (Compl't ¶¶ 4, 27 & Ex. A.) On May 20, 2013, a reviewer using the name "Nemc – New York New York" posted negative comments about ECheck to the Ripoff Report. (Compl't Ex. A.) The review states in full:

> Carlos Santini and Andre Rosa where [sic] always available and everything was no issue until we started putting business to them. First issue was that they were having an issue with one of their accounts and advised us to continue to processing. I want to clear up that what we did with them was check processing not credit card processing. Long story short according to them the accounts were frozen and I would receive my funds as soon as bank released them which would be a couple of months. Here I am over a year out and I have not been able to get a concrete answer from any one of these ripoff artists who once again were always available. Banks do not hold funds for this long. I honestly don't know who they are trying to BS.. Also if you guys think you can intimidate people cause "zeus" was accused of murder.. I could careless.. [sic] Pay up and stop the bulls**t

(Compl't Ex. A.)

Ripoff Report posted a rebuttal from "Jesus aka Zeus Vega / TheECheck.com / 1-855-403-3855," which asserted that the company was "completely compliant with all legal governances, policies and procedures in the merchant processing arena," with "unprecedented" customer service. (Compl't Ex. A.) An author identified as "Nemc" responded, stating that, "This response by Jesus is like a taunt." (Compl't Ex. A.) The "Nemc" response then described

three telephone calls to TheECheck.com, and being placed on hold for more than 10 minutes each time without receiving an answer. (Compl't Ex. A.) The Complaint alleges, upon information and belief, that "Defendants" published these comments "to hundreds of third parties," including those doing business with ECheck. (Compl't ¶ 31.)

On the basis of these "Nemc" posts to Ripoff Report, ECheck brings claims of 1.) false advertising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), 2.) trade libel and commercial disparagement, 3.) common law unfair competition, 4.) tortious interference, and 5.) breach of non-solicitation agreement. (Compl't ¶¶ 55-80, 88-90.) It also alleges breach of contract and unjust enrichment based on NEMC's failure to pay $60,000 allegedly owed to ECheck. (Compl't ¶¶ 81-90.)

DISCUSSION.

I.   ECheck's Motion Is Denied as to Any Individual Defendant.

As to the individual defendants, the Complaint engages in impermissible group pleading, and does not allege facts to show that the corporate defendants are the alter egos of the individual defendants. Moreover, its allegations against the individual defendants are conclusory and fail to allege specific conduct that supports a claim for relief against them.

First, the Complaint engages in impermissible group pleading. "Although Fed. R. Civ. P. 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" Atuahene v. City of Hartford, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (summary order) (quoting Ferro v. Ry. Express Agency, Inc., 296 F.2d 847, 851 (2d Cir. 1961)). A complaint fails to give fair notice when it "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their

conduct . . . ." Id. ECheck's allegations generally attribute misconduct to the "Defendants" collectively, and do not differentiate between the five defendants. (See, e.g., Compl't ¶ 11 ("Defendants acted in concert or individually in a covert scheme and/or conspiracy to harass and defame Plaintiff."); Compl't ¶ 26 ("Defendants have posted taunting material and defamatory statements . . . ."); Compl't ¶ 43 ("Defendants began a smear campaign intended to drive Plaintiff out of business."); Compl't ¶ 53 (alleging that "Defendants" published false and misleading statements); Compl't ¶ 86 ("Defendants have materially breached the parties' agreement . . . .").) For key factual allegations, the Complaint attributes conduct to defendants "Pichardo, Presley and/or Ojay," with the use of the phrase "and/or" impliedly acknowledging that one or more defendant may have played no role in the alleged activity. (Compl't ¶¶ 11 (alleging that NEMC was the alter-ego of "Pichardo, Presley and/or Ojay"); 26 (alleging that "Pichardo, Presley and/or Ojay" authored negative statements about ECheck); 33 (alleging that "Pichardo, Presley and/or Ojay" acted on behalf of NEMC)). Because the Complaint does not adequately allege facts about the conduct of any individual defendant, its claims against them are dismissed.

Second, the Complaint has made only a conclusory assertion that the corporate defendants are alter egos of the individual defendants. (Compl't ¶ 11.) To allege liability on an alter ego theory, the complaint must include "specific factual allegations demonstrating fraud or other corporate misconduct or that the individuals in question conduct business in their personal rather than corporate capacity." Feigen v. Advance Capital Mgmt. Corp., 150 A.D.2d 281, 282 (1st Dep't 1989); see also Port Chester Elec. Const. Co. v. Atlas, 40 N.Y.2d 652, 657 (1976) (in ascertaining corporate alter ego, "[t]he determinative factor is whether the corporation is a 'dummy'" for carrying out personal rather than corporate ends) (quotation marks omitted);

Semigran Enterprises, Inc. v. Noren, 285 A.D.2d 409, 410 (1st Dep't 2001) (dismissing claim premised on alter ego status because the complaint included "no particularized allegations" in support). The Complaint alleges that because "Pichardo, Presley and/or Ojay . . . dominated, controlled and supervised" NEMC, the company was their alter ego. (Compl't ¶ 11.) This is insufficient to allege alter ego liability and the piercing of NEMC's corporate veil. See, e.g., Cornwall Mgt. Ltd. v. Kambolin, 140 A.D.3d 507, 507 (1st Dep't 2016) (bare allegations that defendants "controlled and dominated" corporation "are insufficient to state a cause of action for alter ego liability.").

Because the Complaint has failed to allege personal liability on the part of defendants Pichardo, Presley or Ojay, ECheck's motion for entry of default judgment against defendants Pichardo and Ojay is denied. (Docket # 37.)

II. The Motion for Entry of Default Judgment Is Denied as to Defendant Cyberbox.

The Complaint similarly fails to allege facts in support of any claim against defendant Cyberbox. Cyberbox is alleged to be a Florida corporation with its principal place of business in New York. (Compl't ¶ 7.) The Complaint alleges that the three individual defendants own Cyberbox, a telemarketing and payment-processing business. (Compl't ¶ 24.) It alleges that Cyberbox and ECheck entered into an "Independent Sales Office Agreement" on April 2, 2012, with Pichardo executing the agreement on Cyberbox's behalf. (Compl't ¶ 39.) The agreement included a non-competition clause. (Compl't ¶ 41.)

The Complaint makes no additional allegations specific to Cyberbox. It does not link Cyberbox to the "Nemc" posting on Ripoff Report, or allege conduct specifically attributable to Cyberbox that breached its agreement with ECheck. To the extent that Cyberbox

is lumped into the numerous allegations directed to "Defendants" as a whole, those allegations fail to satisfy Rule 8, for the reasons previously explained.

ECheck's motion for entry of default judgment is therefore denied as to Cyberbox.

> III. ECheck's Motion Is Granted Solely As to ECheck's Lanham Act and Breach of Contract Claims against NEMC.

> > 1. False Advertising under the Lanham Act.

In order to state a claim for relief that is plausible on its face, a plaintiff must allege "only enough facts" to "nudge[]" its claims "across the line from conceivable to plausible . . . ." Twombly, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted).

Section 43(a) of the Lanham Act states in relevant part:

> Any person who . . . in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services, or commercial activities . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). "[A] typical false-advertising case will implicate only the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'" Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1389 (2014) (alterations in original; quoting 15 U.S.C. § 1127). A communication is "commercial advertising or promotion" when it is 1.) commercial speech, 2.) made for the purpose of influencing consumers to buy goods or services, and 3.) disseminated to the relevant purchasing

public. Boule v. Hutton, 328 F.3d 84, 90-91 (2d Cir. 2003). Communications need not be as formal as "those made as part of a classic advertising campaign . . . ." Id. at 90. False and derogatory statements published on a public internet forum may constitute false advertising. See Enigma Software Group USA, LLC v. Bleeping Computer LLC, 194 F. Supp. 3d 263, 295, 297-98 (S.D.N.Y. 2016) (Engelmayer, J.).[1]

Accepting the Complaint's allegations as true, "Nemc" posted false and derogatory comments about ECheck for the purpose of influencing consumers not to do business with ECheck. (Compl't ¶¶ 27, 30 & Ex A.) Because a defaulting defendant admits all well-pleaded factual allegations against it, defendant NEMC has admitted that it is the "Nemc" that posted the allegedly false comments about ECheck on Ripoff Report. See generally City of New York, 645 F.3d at 137. The Complaint includes facts sufficient to plausibly allege that NEMC violated the Lanham Act's prohibition against false advertising.

Plaintiff's motion for entry of default judgment against NEMC is therefore granted as to liability for the Lanham Act claim.

2. Breach of Contract.

Count Five alleges that NEMC and ECheck entered into a Merchant Services Agreement on or about April 20, 2012. (Compl't ¶ 46 and Ex. C.) Under the agreement, "NEMC became indebted to Plaintiff for over $100,000 at various times for Plaintiff's services and or fees set forth therein." (Compl't ¶ 47.) The Complaint alleges that "Defendants thereafter defaulted in the payment obligations due on and after July 30, 2012." (Compl't ¶ 48.) ECheck alleges that it is owed $60,000 in payment under the agreement. (Compl't ¶ 49.)

---

[1] False advertising claims under the Lanham Act are governed by a six-year limitations period. See Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996). ECheck's false advertising claim directed to the May 20, 2013 Ripoff Report post is therefore timely.

CPLR 213(2) establishes a six-year limitations period for a breach of contract claim, and ECheck's breach of contract claim is therefore timely. The Complaint plausibly alleges that NEMC and ECheck entered into a contract, and that NEMC breached the contract by failing to make payments required of it.

ECheck's motion for entry of default judgment is there granted against NEMC as to liability only.

### 3. ECheck's Unjust Enrichment Claim Is Duplicative.

Because the Court concludes that ECheck has demonstrated its entitlement to default judgment against NEMC on its breach of contract claim, its motion for entry of default judgment on its unjust enrichment claim is denied as duplicative. See, e.g., Cont'l Cas. Co. v. Contest Promotions NY, LLC., 2016 WL 1255726, at *4 (E.D.N.Y. Mar. 28, 2016) ("[T]he Court denies Plaintiff's motion for a default judgment as to Plaintiff's unjust enrichment claim, as it is duplicative of the breach of contract claim.") (collecting cases).

### 4. ECheck's Motion Is Denied as to Breach of Non-Solicitation Agreement.

Count Seven alleges that "Defendants" breached a non-solicitation agreement with ECheck. (Compl't ¶¶ 91-94.) This claim appears to be premised on the allegation that Cyberbox's agreement with ECheck included a provision barring plaintiff from contacting ECheck's customers or merchants. (Compl't ¶ 41.)

But the Complaint does not allege any conduct by Cyberbox that breached such a provision. As noted, its allegations broadly lump together the conduct of undifferentiated "Defendants." To the extent that the claim is premised on the Ripoff Report posting of "Nemc," the Complaint has not plausibly alleged that the posting involved Cyberbox.

### 5. ECheck's Remaining Claims Are Untimely.

#### A. Trade Libel and Commercial Disparagement.

New York has a one-year limitations period for trade libel claims, running from date of publication, including online publications. See Enigma Software, 194 F. Supp. 3d at 276; Martin v. Daily News L.P., 121 A.D.3d 90, 103 (1st Dep't 2014); Firth v. State, 98 N.Y.2d 365, 370 (2002); CPLR 215(3).

The Ripoff Report comment was left on May 20, 2013. This action was commenced more than three years later, on November 9, 2016. (Docket # 1.) Because it was filed beyond the one-year limitations period, ECheck's trade libel claim is dismissed.

#### B. Common Law Unfair Competition.

Under New York law, the limitations period for unfair competition is "treated disparately," depending on the nature of the alleged misconduct. Omni Food Sales v. Boan, 2007 WL 2435163, at *6 (S.D.N.Y. Aug. 24, 2007) (Crotty, J.). For unfair competition claims that sound in fraud or breach of fiduciary duty, the limitations period is generally six years, whereas for claims alleging injury to property, the limitations period is generally three years. See id. (collecting cases). Here, ECheck's unfair competition claim is premised on "false and defamatory complaints" and "defamatory statements." (Compl't ¶¶ 69, 71.) Because CPLR 215(3) sets a one-year limitation period for "slander" and "false words causing special damages," applying a one-year limitations period is appropriate, and the unfair competition claim is dismissed as untimely.

Even if the three-year limitations period used for injury to property applies, the unfair competition claim is still untimely. See CPLR 214(4). Separately, the six-year limitations period is inapplicable, as the Complaint does not allege that NEMC had a fiduciary obligation to

ECheck, and its stray invocations of "fraud" and "fraudulent" conduct are conclusory. (See, e.g., Compl't ¶¶ 3, 38.)

ECheck's common law unfair competition claim is therefore dismissed as untimely.

### C. Tortious Interference.

Count Four alleges tortious interference with contractual relations and prospective contractual relations. This claim is governed by the three-year limitation period of CPLR 214(4). See, e.g., Turecamo v. Turecamo, 55 A.D.3d 455 (1st Dep't 2008).

This action commenced more than three years after the Ripoff Report posting. ECheck's tortious interference claim is therefore dismissed as untimely.

CONCLUSION.

ECheck's motions are GRANTED solely as to liability for its Lanham Act and breach of contract claims against NEMC. They are denied in all other respects. The Clerk is directed to terminate the motions. (Docket # 29, 37.)

There will be an inquest as to damages on July 17, 2017 at 2:30 p.m.

SO ORDERED.

　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　　　　　　　P. Kevin Castel
　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: New York, New York
　　　　 June 16, 2017