UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
THEECHECK.COM, LLC,

                         Plaintiff,                              16-cv-8722 (PKC)

       -against-                                             ORDER

NEMC FINANCIAL SERVICES GROUP, INC.,
et al.,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        In a Memorandum and Order of June 16, 2017, this Court granted plaintiff's motion for entry of default judgment solely as to liability against NEMC Financial Services Group, Inc. ("NEMC") on plaintiff's claims for breach of contract and false advertising under the Lanham Act. TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc., 2017 WL 2627912 (S.D.N.Y. June 16, 2017). It denied plaintiff's motion for entry of default judgment as to all other claims and defendants. Id. Familiarity with that decision is assumed.

        On July 17, 2017, the Court presided over an inquest on damages. (See Transcript, Docket # 43.) Plaintiff TheECheck.com, LLC ("ECheck") sought $60,000 in damages on its breach of contract claim, as well as injunctive and monetary relief for its Lanham Act claim. At the hearing, ECheck did not offer into evidence invoices or other documents that reflected moneys owed by NEMC. (See Tr. 37-38.) Two officers of ECheck testified at the hearing: Jesus Vega, the company CEO, and Ashley Nguyen, the company's Vice President of Operations. As will be explained below, the Court finds that the testimony of Vega and Nguyen was vague, contradictory and is afforded little weight.

At the hearing's conclusion, the Court reserved decision, and ECheck requested leave to supplement the record. (Tr. 38-39.) Having reviewed the Supplemental Declaration of Ashley Nguyen, the Court concludes that ECheck is entitled to $6,504 on its breach of contract claim, plus interest, and that it is also entitled to injunctive relief concerning the Ripoff Report posting. ECheck has not shown that it is entitled to money damages for its false advertising claim under the Lanham Act.

A.  ECheck Is Entitled to $6,504 on Its Breach of Contract Claim, Plus Interest.

On September 6, 2017, ECheck filed the Supplemental Declaration of Ashley Nguyen. (Docket # 45.) As to ECheck's breach of contract claim, the declaration states that ECheck has identified evidence to support $6,504 "in lost deposits and service fees" owed by NEMC, as opposed to the $60,000 previously sought. (Nguyen Supp. Dec. ¶¶ 28, 38.) The declaration annexes twelve returned checks from NEMC in the amount of $490 each, and identifies service fees of $12 for each check, plus a $40 fee for each returned check that was required pursuant to the contract between NEMC and ECheck. (Nguyen Dec. ¶¶ 35-40 & Exs. G, H.) NEMC states that it seeks no more than $6,504 in damages, plus interest. (Nguyen Dec. ¶ 40.)

The Court finds that ECheck has proven by a preponderance of the evidence that it is owed $6,504 on its breach of contract claim against NEMC. ECheck is entitled to pre-judgment interest at a rate of 9 percent per annum pursuant to CPLR 5004, calculated from July 30, 2012, which is the date that NEMC allegedly breached its contract with ECheck, through the date that judgment is entered. ECheck is entitled to post-judgment interest in accordance with law.

### B. ECheck Has Not Shown Money Damages Caused by False Advertising Posted to the Ripoff Report.

#### 1. Vega's Testimony.

Vega testified that three banks canceled business relationships with ECheck in 2012, a point in time that pre-dated the allegedly injurious Ripoff Report post of May 2013. (Tr. 5-9, 14-15.) Specifically, he testified that PNC Bank, Charter One Bank and Chase terminated their business relationships with ECheck in 2012. (Tr. 5, 7.) Vega testified that when he spoke to a representative of Charter One in late 2012, that person cited the Ripoff Report as the reason that the bank would no longer do business with ECheck. (Tr. 7-8.) He testified that Chase terminated its relationship with ECheck in Spring or Summer 2012. (Tr. 7.) But the Ripoff Report post cited by ECheck is dated May 20, 2013. (See Compl't Ex. 1.) That post could not be responsible for harming business relationships that ended prior to its publication.

Vega separately testified that in 2014 or 2015, U.S. Bank called to state that it was terminating its relationship with ECheck, but that it did not offer an explanation as to why. (Tr. at 10-11, 17.) Vega later spoke to a U.S. Bank risk manager, who said that the relationship was being terminated because of the Ripoff Report posting. (Tr. 10-11.) Vega did not identify the name of the person with whom he spoke and was unsure of whether that conversation occurred in 2014 or 2015. (Tr. 17.)

There is no documentation supporting the assertion that U.S. Bank terminated its relationship based on the Ripoff Report postings. Given the absence of supporting documentation, the vagueness of Vega's testimony, and the implausibility of Vega's testimony concerning the reason that other banks severed ties with ECheck, the Court affords minimal weight to his testimony concerning ECheck's arrangement with U.S. Bank.

- 3 -

2. Nguyen's Testimony.

Nguyen also did not present any persuasive testimony as to any lost business caused by the Ripoff Report posting. She described a transaction with an individual named Cristina Souza-Piranio, who e-mailed ECheck stating that she was reluctant to do business with the company due to the Ripoff Report review. (Tr. 28-29.) Nguyen also identified a cancelled relationship with a merchant client, Nikhat Infotech ("Nikhat"), but she could not recall the date or circumstances of the relationship's termination and stated that she didn't "want to speak out of turn." (Tr. 30.) Nguyen attributed business losses in a range of $5,200 to $390,000 due to the Ripoff Report postings, an estimate that was not supported by documentation. (Tr. 27.) When the Court questioned Nguyen about the damages estimate, Nguyen testified that she "would have to look into this," offered reasons why she may have been "confused," and cited "a rotten e-mail" from Souza-Piranio. (Tr. 27-28.) She also agreed that her testimony describing Souza-Piranio's status as a direct business client of ECheck was "not accurate." (Tr. 29.)

3. Nguyen's Supplemental Declaration.

Nguyen's supplemental declaration includes e-mails sent by Nikhat and Souza-Piranio. (Nguyen Supp. Dec. Exs. B, C.)

Nikhat's e-mail, dated April 23, 2016, is a profanity-laden tirade against ECheck's "scam," and wishes fatal violence against ECheck management. (Nguyen Supp. Dec. Ex. B.) It includes links to four negative internet reviews of the company, including one to the Ripoff Report. (Nguyen Supp. Dec. Ex. B.) It states, "I am simply amazed by seeing these reviews," and, "Finally after my long research I found out, that you really are a scam." (Nguyen Supp. Dec. Ex. B.) It also states "that this will be you [sic] last time to do business with this domain, www.theecheck.com." (Nguyen Supp. Dec. Ex. B.)

Nguyen estimates that Nikhat's termination of its business with ECheck resulted in $5,200 to $390,000 in lost business. (Nguyen Supp. Dec. ¶ 14.) But Nguyen and ECheck do not offer supporting documentation of what Nikhat actually paid to ECheck during the three years that they did business together, nor is there any explanation of how Nguyen's estimate was formulated. Nguyen has separately asserted that the loss of any single merchant client caused ECheck to lose between $1,000 and $150,000 in "gross processing" each week, and that ECheck receives five percent of the gross proceeds. (Nguyen Supp. Dec. ¶ 13; Nguyen Dec. ¶ 20.)[1] Because ECheck's damages regarding lost business with Nikhat is based only on estimates that are unexplained and unsupported by the evidence, ECheck has not shown that it is entitled to damages.

Nguyen and ECheck have also not identified damages related to lost business with Souza-Piranio. On January 4, 2015, Souza-Piranio e-mailed Nguyen stating that ECheck "does not look as a legitimate company. They have said on their emails they tried to contact me and left detailed messages but that is a lie (they never called). They never answer their phone, there is just a mailbox to leave messages. You can easily find complaints for them if you look online at [Better Business Bureau] or ripoff websites." (Nguyen Supp. Dec. Ex. C.) Souza-Piranio then pasted links to Better Business Bureau and Ripoff Report reviews. (Id.) She stated that for twelve years, she had done business with a merchant whose name is redacted without any problems, "but your association with this apparently illegitimate company [ECheck] makes me

---

[1] Even using these unsupported estimates, the Court cannot discern how Nguyen and ECheck reached their damages calculations. Nguyen's declaration of March 7, 2017 states: "The estimated value of the lost contracts range in volume from $1,000 to $150,000 gross processing a week; based on TheECheck.com's 5% average fee, the estimated losses for these two clients alone was between $5,200 to $390,000 each year." (Nguyen Dec. ¶ 20.) The Court notes that a five-percent annual fee on an arrangement with a gross weekly value of $1,000 would total $2,600, and a five-percent annual fee on an arrangement with a gross weekly value of $390,000 would total $1,014,000. These numbers vary significantly from the $5,200 to $390,000 in annual loss estimated by Nguyen.

thing [sic] twice before ordering again from your company." (Id.) She states that she canceled her order involving ECheck. (Id.)

Nguyen's supplemental declaration explains that her prior declaration and testimony erroneously indicated that Souza-Piranio was a business client of ECheck, as opposed to a consumer who did business with a merchant affiliated with ECheck. (Nguyen Supp. Dec. ¶ 10.) Nguyen's previous declaration described Souza-Piranio as a "potential partner" who stopped doing business with ECheck based on the Ripoff Report, and was one of two clients who caused between $5,200 and $390,000 in losses. (Nguyen Dec. ¶ 20.) At the hearing, Nguyen testified that Souza-Piranio was the customer of a client, but testified that she was uncertain whether Souza-Piranio was "a client as well" and/or "a potential client," and stated, "maybe I'm confused" about her status. (Tr. 25-28.) Eventually, Nguyen stated that Souza-Piranio was "not a customer" of ECheck and agreed that her prior declaration "was not accurate." (Tr. 29.)

More importantly for ECheck's damages assertion, Nguyen states that the merchant involved in the underlying transaction continued to do business with ECheck. (Nguyen Supp. Dec. ¶ 17 ("Fortunately, the merchant decided to continue doing business with TheECheck.com, notwithstanding the Ripoff Report or Ms. Cristina Souza-Piranio's e-mail.").) Nguyen and ECheck have not identified any losses attributable to Souza-Piranio's decision to cancel her order with a non-party business.

The Court therefore concludes that ECheck has not shown monetary losses attributable to NEMC's allegedly false postings to the Ripoff Report website.

C. ECheck Is Entitled to Injunctive Relief on Its False Advertising Claim.

The Lanham Act provides for injunctive relief as a remedy to a false advertising claim. 15 U.S.C. § 1116(a). "It is an ancient common law axiom that a defendant who defaults

thereby admits all well-pleaded factual allegations contained in the complaint." City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) (internal citation and quotation marks omitted). If a plaintiff proves that a false advertisement is literally false, a plaintiff may be entitled to injunctive relief, even if no impact is shown as to the buying public. Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, 843 F.3d 48, 65 (2d Cir. 2016) ("If an advertising message is literally false, the 'court may enjoin the use of the message without reference to the advertisement's impact on the buying public.'") (quoting Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 112 (2d Cir. 2010)). An advertisement's claim is literally false if it is "false on its face" when evaluated "in full context." Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 63 (2d Cir. 2016) (quotation marks omitted). The falsehood must involve "an inherent or material quality of the product." Id. (quotation marks omitted).

The Complaint annexes a copy of the Ripoff Report posting allegedly authored by NEMC. (Compl't Ex. A.) The posting describes failed attempts to communicate with ECheck, a freeze placed on the customer's funds and states that an individual affiliated with ECheck who is identified as "zeus" had been accused of murder. (Id.) The Complaint alleges that these were statements of fact, and not statements of opinion; that NEMC knew them to be false statements of fact; and cites to the purported falsehoods in alleging false advertising under the Lanham Act. (Compl't ¶¶ 30, 44, 53-54.)

By defaulting, NEMC admits that it authored the Ripoff Report review. Mickalis, 645 at 137. That review contains statements of fact concerning ECheck's communications failures, the freezing of customer funds and murder accusations against "zeus." Viewed in full context on this default motion, such claims are false on their face, and involve an inherent or material quality of the services provided by ECheck. Apotex, 823 F.3d at 63. Because NEMC is

allegedly a competitor of ECheck and the Ripoff Report posts are deemed literally false, ECheck has been irreparably harmed under the Lanham Act.  <u>See</u>, <u>e.g.</u>, <u>Merck Eprova AG v. Gnosis S.p.A.</u>, 901 F. Supp. 2d 436, 461 (S.D.N.Y. 2012) (Sullivan, J.).  ECheck is therefore entitled to injunctive relief on its false advertising claim.  <u>Church & Dwight</u>, 843 F.3d at 65.

ECheck seeks an injunction directing NEMC to "tak[e] down and de-index[]" the statements posted to the Ripoff Report.  Such relief is relatively narrow in scope and does not offend public interest.  NEMC is therefore ordered to immediately take all practical measures to facilitate the removal of its posts to the Ripoff Report dated May 20, 2013 and May 21, 2013.

CONCLUSION.

The Clerk is directed to enter Judgment in favor of ECheck in the amount of $6,504 on its breach of contract claim against NEMC, plus pre-judgment interest and post-judgment interest.

ECheck's application for injunctive relief under the Lanham Act is GRANTED.  NEMC Financial Services Group, Inc. is hereby ORDERED to immediately take all practical measures to facilitate the removal of its posts to the Ripoff Report dated May 20, 2013 and May 21, 2013.

The Clerk is directed to enter Judgment in favor of defendants Cyberbox Technology, Inc., Ellington Pichardo, Presley Martinez and Ojay Martinez-Gil.

The Clerk is directed to close the case.

SO ORDERED.

                                                                                                          P. Kevin Castel  
                                                                                                   United States District Judge

Dated: New York, New York  
        November 1, 2017